# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| THERESA BACA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:19-cv-06057-RK |
| | ) |
| CITY OF PARKVILLE, PARKVILLE | ) |
| POLICE DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants City of Parkville and Parkville Police Department's motion for summary judgment. (Doc. 65.) The motion is fully briefed. (Docs. 66, 69, 70, 79.) After careful consideration and for the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**. The motion is denied as to Plaintiff's claim for wrongful prosecution for resisting arrest (Count IV) inasmuch as *Monell* liability as to Defendant City of Parkville rests on a decision by the city prosecutor. The motion is granted in all other respects.

### Background[1]

On March 25, 2017, Plaintiff Theresa Baca was driving in Parkville, Missouri, when she was pulled over by Parkville Police Officer Eric Sollars. Several of Plaintiffs' friends were riding in the car with her. Officer Sollars initiated the traffic stop after he witnessed Plaintiff fail to properly signal a left-hand turn. Officer Sollars' in-dash camera and interior camera recorded audio and video of the interaction.

Plaintiff suffers from post-traumatic stress disorder ("PTSD") and is a rape survivor; as a result, she is fearful of men. Officer Sollars approached the passenger side of Plaintiff's vehicle and obtained her identifying information and vehicle registration. Officer Sollars then contacted dispatch who informed him that Plaintiff had an active arrest warrant for assault by the City of Independence, Missouri. After Parkville Police Officer Dakota Haynes arrived on the scene, Officer Sollars and Officer Haynes approached Plaintiff's vehicle together. Officer Sollars

---

[1] The following facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted properly controverted facts, asserted facts that are immaterial to the resolution of the pending motion, asserted facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

approached the driver's side of the vehicle and asked Plaintiff to exit the vehicle. After she did so, Officer Sollars informed her of the warrant for her arrest and that she was going to be taken into custody. Plaintiff told Officer Sollars that the only person she knew in Independence was her son's father, whom she was "in a DV shelter from." She stated that she wanted to know more information before getting into a car with two men. Officer Sollars told Plaintiff she would need to address the substance of the warrant with Independence. Plaintiff asked the police officers to call a female officer. Officer Sollars responded, "we don't have a female officer" and "I can still take you into custody." Officer Sollars instructed Plaintiff to turn around and place her hands behind her back, and that if she did not do so she would be resisting arrest. As Plaintiff turned around, Officer Sollars moved toward Plaintiff and told her to place her hands at the small of her back. When Plaintiff began to turn away from him, Officer Sollars touched Plaintiff's arm to attempt to place her hands behind her back and into handcuffs. Plaintiff's PTSD symptoms were triggered and she told the police officers to "please don't touch me like that" and "you don't understand, I've been raped," as she moved and struggled against the officers' attempts to take her into custody. Plaintiff and her friends stated that she suffers from PTSD and asked if the officers were trained about PTSD. The officers had difficulty placing Plaintiff into handcuffs; they told her to stop resisting and twisted her arms behind her back, using their body weight to push her against the rear of her vehicle. It took the officers approximately four minutes to properly secure Plaintiff in handcuffs due to her movements and actions that prevented them from doing so.

After she was secured in handcuffs, Officer Sollars conducted a pat-down search on the outside of Plaintiff's clothing to check for weapons (a standard and cursory search he performs whenever he places an individual under arrest). Officer Sollars and Officer Haynes placed Plaintiff in the back of Officer Sollars' patrol vehicle. Officer Sollars testified at his deposition he had probable cause to believe Plaintiff was resisting arrest based on her failure to comply with his instructions to place her hands behind her back, attempting to pull her arms and body away from him, kicking her feet, and moving her body.

Officer Sollars requested that a female officer meet him at the police station to assist in booking Plaintiff and was told a female officer would be available in approximately fifteen minutes at the Parkville police station. Sergeant Kat Smith, a female officer with the Parkville Police Department, assisted Plaintiff through the booking process.

2

After the booking process was complete, Plaintiff was transferred to the Platte County Detention Center. Independence declined to have Plaintiff transferred to their jurisdiction and was willing to allow her to be released on bond. Because she had been charged with resisting arrest, however, Plaintiff remained at the Detention Center for two days under a "Municipal Hold."

## Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted." *Smith-Bunge v. Wis. Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [he] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

3

**Discussion**

Plaintiff brings two claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, for wrongful arrest and failure to provide a reasonable accommodation. She also asserts two claims under 42 U.S.C. § 1983 for excessive use of force and wrongful arrest and prosecution, as well as a claim that the officers violated her substantive due process rights under the Fourteenth Amendment. Plaintiff brings this lawsuit against the City of Parkville, Missouri, ("the City") and the Parkville Police Department. She does not assert any claims against the individual officers.

## I. Counts I and II – ADA Claims

In Counts I and II Plaintiff brings several claims under the ADA against both Defendants based on the officers' actions during the traffic stop that culminated in her arrest and detention for resisting arrest. Specifically, Plaintiff claims the police officers discriminated against her based on her disability by arresting her for resisting arrest when the conduct for which she was arrested was related to her PTSD disability. Plaintiff also claims Defendants failed to accommodate her PTSD disability in the course of her arrest and prosecution for resisting arrest and failed to properly train the police officers in dealing with persons suffering from PTSD. Defendants argue they are entitled to summary judgment because Officer Sollars and Officer Haynes did not violate the ADA by arresting Plaintiff for resisting arrest because they perceived her behavior as unlawful, and she was arrested pursuant to a valid arrest warrant rather than because of her disability. Defendants also argue they are entitled to summary judgment because the ADA does not apply to traffic stops and Plaintiff's accommodation request was not reasonable under the circumstances.

The ADA prohibits the "exclu[sion] from participation," the "den[ial of] the benefits of the services, programs, or activities of a public entity," or "discrimination by any such entity" based on the disability of a qualified individual. 42 U.S.C. § 12132.[2] The ADA defines "public entit[ies]" to which the ADA applies as including "any department, agency, . . . or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

### A. Wrongful Arrest Theory

First, Plaintiff advances the theory of a claim under the ADA based on "the officers[] unreasonably mistak[ing] an innocent, disability-related behavior for criminal conduct." *Roberts*, 723 F.3d at 973 (citing *Jackson v. Inhabitants of the Town of Sanford*, No. 94-12 P-H, 1994 WL

---
[2] Defendants do not contest Plaintiff is disabled under the ADA.

589617, at *1, 6 (D. Me. Sept. 23, 1994)); *see Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999) (this theory of ADA liability is based on police "wrongly arrest[ing] someone with a disability because they misperceived the effects of that disability as criminal activity") (citing *Lewis v. Truitt*, 960 F. Supp, 175, 178 (S.D. Ind. Mar. 19, 1997) (citing *Jackson*).

As a factual matter, this case is distinguishable from these cited cases (including *Roberts* and *Jackson*, on which Plaintiff expressly relies). In each of the above cases applying this theory of ADA liability, the plaintiff seeking to recover damages was arrested solely for conduct perceived as criminal by law enforcement that was, in actuality, a function or outcome of the plaintiff's disability. In *Jackson*, for instance, police arrested plaintiff for driving under the influence when, in actuality, what the officers observed (slurred speech and partial paralysis) was the result of plaintiff having suffered a brain aneurysm several years earlier. 1994 WL 589617, at *1. The same is true in *Roberts*. In that case, the ADA claim rested on responding officers shooting and killing an individual who had been diagnosed with a mental disability and paranoid schizophrenia and was having a psychotic episode; shooting him after he refused officers' commands to lie down on the floor and drew a knife and stabbed at the officers while they attempted to physically restrain him. *Roberts*, 723 F.3d at 970. Similarly, in *Gohier*, the plaintiff sought damages under the ADA after police officers shot and killed Gohier who suffered mental health issues when he began advancing towards officers with an object in his hand and swung it down and forward in a stabbing motion. 186 F.3d at 1217-18. Finally, in *Lewis*, the plaintiff pursued an ADA claim for damages after the police arrested plaintiff for resisting law enforcement but in reality, plaintiff was deaf and the officers refused to try to communicate with him by writing on paper while giving him orders to follow. 960 F. Supp. at 176.

In the present case, Officer Sollars and Officer Haynes initiated Plaintiff's arrest not on the basis of any disability-related conduct they perceived as criminal but because she had an active warrant for her arrest for assault from another jurisdiction. Plaintiff's claim is not so much that she was arrested "for" resisting arrest (which she contends was due to her disability) but that she was criminally charged with and detained under a Municipal Hold for conduct the officers perceived as criminal but that was involuntary disability-related conduct. Plaintiff provides no legal support for her argument that the "wrongful arrest" theory for claims made under the ADA applies in this circumstance, particularly when she was at a minimum arrested "for" wholly non-disability-related conduct or reason (the active arrest warrant) if alongside the additional reason

5

(resisting arrest) that Plaintiff contends was misperceived. Nonetheless, assuming this is a viable claim under the ADA, Defendants are still entitled to summary judgment.

In pursuing a claim under the ADA for wrongful arrest, federal courts have recognized that "a plaintiff must establish three elements: (i) the plaintiff was disabled, (ii) the arresting officers knew or should have known that the plaintiff was disabled, and (iii) the defendant arrested the plaintiff because of legal conduct related to the plaintiff's disability." *J.H. ex rel. J.P. v. Bernalillo Cty.*, No. CIV 12-0128 JB/LAM, 2014 WL 3421037, at *76 (D.N.M. July 8, 2014) (citation omitted). When applying this theory, federal courts have held "the conduct that is mistaken for criminal activity must actually be lawful." *Sperry v. Maes*, No. 10-cv-03171-RPM, 2013 WL 3465784, at *5 (D. Colo. July 10, 2013) (comparing *Jackson*, "a case where a stroke victim was arrested for driving under the influence, even though he had actually been driving sober" and *Lewis*, "a case where a deaf man was charged with resisting arrest, when in fact he simply could not hear the officers' orders," with *Gohier*, holding the theory did not apply when a schizophrenic man physically threatened a police officer even though the behavior was related to his disability); *accord Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 428-29 (D. Del. Aug. 7, 2013) ("The essence of this theory is that the police mistake legal conduct caused by the disability of illegal conduct.") These cases reveal the critical defect in Plaintiff's case for ADA liability for wrongful arrest.

The crux of Plaintiff's argument is that she should not have been separately charged with and detained under a Municipal Hold for resisting arrest because what the officers objectively viewed as her resisting their lawful arrest was actually an involuntary reaction from her PTSD disability. This argument appears to improperly conflate lack of criminal liability with civil liability under the ADA, however. That the *reason* underlying Plaintiff's bodily movements or behavior when the officers moved to physically place her in handcuffs after she refused their instructions to allow them to do so may well have ultimately absolved her of any criminal liability does not mean she was necessarily charged with resisting arrest based on "lawful conduct related to [her] disability." Indeed, Plaintiff does not argue the conduct or behavior perceived by Officer Sollars and Officer Haynes as her resisting arrest was *legal*; rather, she argues her behavior and conduct was *involuntary* and was triggered by the officers reaching to physically secure her in handcuffs.

6

Although cited by neither party, the Court finds particularly persuasive *Hoolihan v. Clayton County, Georgia*, No. 1:10-cv-01753-SCJ, 2012 WL 12888679 (N.D. Ga. Mar. 12, 2012), *aff'd* 507 F. App'x 831 (11th Cir. 2013). In *Hoolihan*, a diabetic plaintiff sued the county after he was arrested for battery and obstruction (charges which were later dismissed) while suffering a diabetic episode. While returning home from work, plaintiff became disoriented and parked his car in a parking lot. *Id.* at *1. Officers on patrol approached plaintiff's car when they noticed it was parked improperly in the parking lot at an unusual hour. *Id.* As the officers approached the car, they saw it was still running and that plaintiff was slumped over the center console. *Id.* One of the officers knocked on the driver's side window and plaintiff responded with incoherent mumbling. *Id.* Plaintiff did not respond when one of the officers asked him to put the car in "park" and to unlock the door. The officers then broke a back window so they could place the car (which was still in drive) in "park." *Id.*

As one of the officers tried to unlock the driver's side door from inside the back seat, plaintiff turned towards him, grabbed the officer's arm and wrist, and began punching the officer. *Id.* The officer and plaintiff began fighting in the back seat of the car. *Id.* The other officer opened the passenger side door, which had been unlocked during the struggle, and pulled plaintiff out of the car. *Id.* at *2. The officers struggled with plaintiff while trying to handcuff him and physically restrain him. *Id.* The officers called for medical assistance and after the ambulance arrived, discovered plaintiff had had a "diabetic issue." *Id.* Plaintiff recalled finding himself in the ambulance handcuffed to the stretcher with injuries on his face, wrist, and leg. *Id.* The district court rejected the plaintiff's argument that the officers had violated the ADA by arresting him for disability-related conduct confused with criminal activity. *Id.* at *8. The court held: "Mr. Hoolihan was not arrested for legal conduct related to his medical condition, rather he was arrested for his actions, which under the circumstances could have been reasonably viewed to be intentional and, thus, unlawful." *Id.* at *8.

The same is true here. Plaintiff was not arrested for legal conduct but instead was arrested for actions that could have reasonably been viewed as unlawful. Again, Plaintiff argues only her conduct was "involuntary," not that it was necessarily legal conduct. The undisputed facts show Plaintiff was not arrested and charged for "legal conduct related to [her] medical condition." Plaintiff verbally and then physically resisted the officers' instructions to place her hands behind her back so they could place her in handcuffs to arrest her based upon the active arrest warrant.

7

To the extent Plaintiff was arrested for the physical conduct and bodily movements the officers perceived as resisting arrest (and because of which it took the officers four minutes of struggling to place Plaintiff in handcuffs) Plaintiff was arrested for her actions that could reasonably have been viewed as unlawfully resisting arrest. Moreover, like *Hoolihan*, it is undisputed that Officers Sollars and Haynes were told about Plaintiff's PTSD diagnoses only after she refused to follow the officers' instructions and began to struggle with them when they moved to place her in handcuffs.[3] Even if the wrongful-arrest theory applies under these circumstances (which the Court is doubtful), Defendants did not violate the ADA by charging Plaintiff with (and detaining her under a Municipal Hold for) resisting arrest, notwithstanding she suffers a disability under the ADA. *See also Bates ex rel. Johns v. Chesterfield Cty., Va.*, 216 F.3d 367, 373 (4th Cir. 2000) (finding no ADA violation where plaintiff – who was autistic – was not arrested because of his disability but because of "objectively verifiable misconduct" when plaintiff assaulted a police officer, even though plaintiff argued the struggle that ensued would not have occurred but for the officer detaining and arresting him and the struggle ensued because of his disability).

### B. Reasonable Accommodation Theory

Second, Plaintiff argues the officers failed to reasonably accommodate her disability when taking her into custody. Whether officers reasonably accommodate an individual in the context of an arrest is "highly fact-specific and varies depending on the circumstances of each case, including the exigent circumstances presented by criminal activity and safety concerns." *Bahl v. Cty. of Ramsey*, 695 F.3d 778, 784-85 (8th Cir. 2012) (citing *Bircoll v. Mami-Dade Cty.*, 480 F.3d 1072, 1086 (11th Cir. 2007)). This is so because, as the Eighth Circuit has reasoned, "[t]he duties of police officers during a traffic stop call for the exercise of significant judgment and discretion, and [courts] will not second guess those judgments, where . . . an officer is presented with exigent or unexpected circumstances" under which "it would be unreasonable to require that certain accommodations be made in light of overriding public safety concerns." *Id.* at 785 (citations omitted). Additionally, in this context, "a duty to reasonably accommodate a person's disability during an arrest . . . arise[s] only if [the officer] had known that [the arrestee] needed an accommodation." *J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015)

---

[3] To the extent Plaintiff requested a female officer and told the officers she was in a domestic violence shelter from her son's father, these facts go to Plaintiff's reasonable accommodation claim rather than her ADA claim under the wrongful arrest theory.

(citation omitted); *see Thompson v. Badgujar*, No. 20-cv-1272-PWG, 2021 WL 3472130, at *9 (D. Md. Aug. 6, 2021) ("when it comes to holding public entities liable under the ADA, a plaintiff must establish knowledge on that entity's part, meaning the entity is aware of a 'known physical or mental limitation,' evincing a clear need for accommodation") (collecting cases).

Here, Plaintiff argues the officers violated the ADA and failed to accommodate her disability by not asking about or awaiting the arrival of a female officer. Plaintiff argues that she had followed the officers' instructions to get out of the car, had told them she was in a domestic violence shelter from her son's father, and had requested a female officer. By that point, however, the officers had learned Plaintiff had an active warrant for her arrest for assault and had told her she was going to be taken into custody based on that warrant. It is undisputed that neither Plaintiff nor her friends had mentioned she suffered from or was diagnosed with PTSD at that point. By the time Plaintiff and her friends told the officers she suffered from PTSD, Plaintiff had already begun physically resisting and struggling against the officers' attempt to secure her in handcuffs and arrest her. The Court is sensitive and sympathetic to Plaintiff's PTSD diagnosis and symptoms of that diagnoses and the effect it undoubtedly has on Plaintiff's daily life. Under these circumstances, however, the officers did not violate the ADA by moving to take Plaintiff into custody on the active arrest warrant and to secure a scene involving multiple other persons in Plaintiff's car and then, most especially, after Plaintiff began physically resisting the officers' attempt to handcuff her.

Apart from not waiting for a female officer, Plaintiff's related argument that the officers failed to accommodate Plaintiff's disability by using physical force against her to take her into custody similarly fails. Plaintiff did not follow the officers' commands to place her hands and arms behind her back to take her into custody on the arrest warrant and began physically struggling when the officers touched her arm to place her in handcuffs. It is not disputed that only after the officers moved to physically place Plaintiff's hands and arms behind her back (and after she started physically resisting) that they were told Plaintiff suffered from PTSD. Given Plaintiff's verbal and then physical resistance to being arrested and placed in handcuffs under the active arrest warrant (whether because her PTSD was triggered or not), the officers did not violate the ADA by using physical force against her to place her in handcuffs.

Finally, Plaintiff argues the officers' pat-down search after securing her in custody, without waiting for a female officer, constitutes a failure to accommodate her disability. Given the need

9

to further secure the scene before placing Plaintiff in a patrol vehicle (and considering the several other persons in Plaintiff's car), the officers did not violate the ADA to the extent they conducted a cursory pat-down search after finally securing Plaintiff in handcuffs after several minutes of struggling to arrest her.[4]

## C. Conclusion

Because the Court finds the officers did not violate the ADA by wrongfully arresting Plaintiff because of her disability or failing to make reasonable accommodations for her disability in security the traffic stop and taking her into custody, Defendants are entitled to judgment as a matter of law on Counts I and II. Defendants' motion for summary judgment is **GRANTED** as to Counts I and II.

## II. Counts III and IV – 42 U.S.C. § 1983 Claims

In Counts III and IV, Plaintiff asserts two claims under § 1983 for excessive force and unlawful arrest/prosecution against both Defendants.

### A. Defendant Parkville Police Department

First, Defendant Parkville Police Department argues it is entitled to summary judgment because it is not a legal entity capable of being sued. Plaintiff concedes that the City, and not the Parkville Police Department, is the sole party liable for the claims she asserts in her petition. (Doc. 69 at 55 n.1.) The Court agrees. *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (dismissing § 1983 complaint against West Memphis Police Department because it is "not [a] juridical entit[y] suable as such" but is "simply [a] department[] or subdivision[] of the City government"); *Running Shield v. Huether*, No. 4:17-CV-04095-LLP, 2018 WL 3651353, at *3 (S.D. 2018) (granting summary judgment to Sioux Falls Police Department as an entity not amenable to § 1983 lawsuit; collecting cases); *Mosley v. Reeves*, 99 F. Supp. 2d 1048, 1053-54 (E.D. Mo. 2000).

Moreover, under Federal Rule of Civil Procedure 17(b)(3), the Parkville Police Department's capacity to be sued is determined by the laws of the State of Missouri. "The Missouri Supreme Court held long ago that departments of a municipality cannot be sued unless statutory

---

[4] Having found the evidence demonstrates no violation of the ADA under these circumstances, Plaintiff's claims for failure-to-train under the ADA must also fail. Nevertheless, Plaintiff's failure-to-train claim would fail on the merits. *See Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527-28 (8th Cir. 2007) (holding city did not violate individual's ADA rights because "[i]t was not the City's failure to train its officers, but Alfred's apparent attempt to run over the officers that precipitated the shooting," notwithstanding Alfred's bipolar disorder diagnosis).

10

authorization to sue and be sued has been given to the departments." *Catlett v. Jefferson Cty.*, 299 F. Supp. 2d 967, 969 (E.D. Mo. 2004) (citing *Am. Fire Alarm Co. v. Bd. of Police Comm'rs of Kansas City*, 227 S.W. 114, 117 (Mo. 1920); *White v. Camden Cty. Sheriff's Dep't*, 106 S.W.3d 626, 631 (Mo. App. S.D. 2003) (holding that a county sheriff's department is not a legal entity capable of being sued); other citation omitted). Because the Court finds no statutory authority granting the Parkville Police Department the ability to sue or to be sued, the entity is a department of the city and is not subject to suit. *See Reed v. Choice Hotels, Inc.*, No. 05-3133-CV-S-SWH, 2005 WL 8157325, at *1 (W.D. Mo. Oct. 25, 2005) (holding that the Springfield Police Department is not subject to suit under § 1983, granting the Department's motion to dismiss).

Accordingly, because it is a non-suable entity, Defendant Parkville Police Department is entitled to judgment as a matter of law. The motion for summary judgment is **GRANTED** as to Plaintiff's claims asserted in Counts III and IV against the Parkville Police Department. *See, e.g.*, *Willis v. Rock Hill Mech. Corp.*, No. 4:19 CV 952 RWS, 2021 WL 4476740, at *7 (E.D. Mo. Sept. 30, 2021).

### B. Section 1983 – Municipal Liability

Next, the City argues it is entitled to summary judgment because Plaintiff does not show she is entitled to relief under § 1983 for excessive force and unlawful arrest/prosecution.

It is well established that municipal liability under § 1983 cannot be based on a *respondeat superior* theory (that is, a municipality cannot be held liable under § 1983 "solely because it employs a tortfeasor"). *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, municipal liability under § 1983 rests only upon some "'action pursuant to official municipal policy of some nature [that] caused a constitutional tort.'" *Id.* (quoting *Monell*, 436 U.S. at 691). Under *Monell*, the City may be liable under § 1983 for a constitutional violation that results from (1) an official municipal policy; (2) an unofficial municipal custom; or (3) a deliberately indifferent failure to train or supervise. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Additionally, a municipality cannot be liable under § 1983 without an underlying constitutional violation by the individual officers. *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) (other citation omitted); *see Williams v. City of Carl Junction, Mo.*, 480 F.3d 871, 878 (8th Cir. 2007).

### 1. Excessive Force

First, the City argues it is entitled to summary judgment on Plaintiff's excessive force claim because there is no underlying constitutional violation. *See Sanders*, 474 F.3d at 527 ("[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . municipal liability"; citation omitted); *Schuettle v. Jefferson Cty.*, 788 F.3d 855, 861-62 (8th Cir. 2015) (affirming summary judgment in favor of county where plaintiff failed to establish that the individual law enforcement officers violated plaintiff's constitutional rights). The Court agrees.

"An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Chambers v. Pennycook*, 641 F.3d 898, 905-06 (8th Cir. 2011) (citation and internal quotation marks omitted). The necessary inquiry is "whether the force used to effect a particular seizure is 'reasonable.'" *Id.* at 906 (citation and quotation marks omitted); *accord Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001) ("The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.") (citation and quotation marks omitted). Law enforcement officers may use physical force to subdue an arrestee who fails to comply with orders during handcuffing. *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (citation omitted).

The Court concludes it was objectively reasonable for the officers to believe Plaintiff was resisting arrest when she refused their instruction to place her hands behind her back and when she twisted away as Officer Sollars grabbed her arm to place her in handcuffs. Officer Sollars had told Plaintiff she was going to be arrested under the active warrant and that if she did not turn around and place her hands on the small of her back, she would be resisting arrest. It was only at the point Plaintiff began to turn away from the officers that they grabbed her arms to place them behind her back and secure her in handcuffs. It is undisputed Plaintiff then tensed up, twisted away, and physically resisted the officers' attempt to place her in handcuffs. To the extent the officers used physical force against Plaintiff – placing her arms behind her back, using their body weight to push her against the rear bumper of the car, and grabbing her arms – this force was objectively reasonable.

Plaintiff also argues that her reaction to the officers touching her and trying to place her hands behind her back (that is, being unable to stand, tensing up, shaking, etc.) was an involuntary

reaction due to her PTSD. This argument is unavailing, however. It is significant that Plaintiff and her friends stated she had PTSD only after the officers learned of the active arrest warrant, experienced Plaintiff's resistance, and began to physically try to secure Plaintiff in handcuffs after she initially began resisting. In *Schoettle v. Jefferson County*, 788 F.3d 855 (8th Cir. 2015), a plaintiff alleging excessive force during his arrest argued that the force used in his arrest (including being physically removed from his truck, the restraint of his arms, being forced to the ground, the employment of pepper-spray, and strikes to his head and body) was unreasonable because at the time he was suffering a diabetes-related reaction. The plaintiff argued the defendants were not entitled to summary judgment because there was a material dispute whether the officers knew he was experiencing a medical emergency. The Eighth Circuit reasoned:

> It is certainly true that an officers' knowledge of an arrestee's medical condition can be relevant to a determination of whether the officer employed excessive force. After all, *Graham* [*v. Connor*, 490 U.S. 386 (1989),] instructs that we are to determine whether the level of force was objectively reasonable in light of the facts and circumstances confronting the officers at [the] time the force was used. However, we are persuaded by the record before us that the level of force used by the officers against Schoettle was objectively reasonable, regardless of when they learned that he was experiencing a medical emergency.
> . . .
> . . . [T]he record indisputably shows that even if the officers became aware at some point during their interaction with Schoettle that he was suffering a hypoglycemic episode, they were still confronted with a belligerent and impaired man who was refusing to comply with their orders to exit the vehicle and who was physically resisting their attempts to remove him from it.

*Id.* at 861 (citation omitted).

Here, even accepting as true that Officer Sollars and Officer Haynes learned Plaintiff was suffering from PTSD symptoms while they were trying to place her in handcuffs, they were still faced with an individual with an active arrest warrant for assault who refused the officers' multiple orders to turn around and place her hands behind her back to be handcuffed, and who pulled away and otherwise physically resisted their attempts to secure her in handcuffs. It was objectively reasonable under these circumstances for the officers to physically grab her arms and place them behind her back and to use their body weight to push Plaintiff against the rear bumper of her car to secure her in handcuffs. Accepting that Plaintiff's reaction when the officers moved to physically place her in handcuffs (after having failed to comply multiple orders to turn around and place her hands behind her back) was involuntary and due to her PTSD, the Court finds

13

nevertheless "the [officers] on the scene reasonably could have interpreted [Plaintiff]'s actions as resistance and [they] responded with an amount of force that was reasonable to effect the arrest." *Carpenter*, 686 F.3d at 650 (citation omitted). The undisputed facts show it was only after this initial point the officers learned Plaintiff suffered from PTSD. The officers otherwise used minimal force to place Plaintiff in handcuffs by placing her arms behind her back; they did not strike, punch or kick Plaintiff, nor did they utilize weapons or irritants of any kind to garner compliance. "A de minimus use of force . . . is insufficient to support a finding of a constitutional violation." *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (citations omitted). Because the Court finds no reasonable jury could find the officers used excessive force by physically restraining Plaintiff in this instance to effectuate her arrest pursuant to an active arrest warrant, the City is entitled to summary judgment on this claim. *See Schuettle*, 788 F.3d at 861-62. Therefore, the City's motion for summary judgment as to Count III is **GRANTED**.

### 2. Unlawful Arrest/Prosecution

In Count IV, Plaintiff asserts a claim of unlawful arrest/prosecution. Plaintiff argues her constitutional rights were violated when she was arrested, detained, and charged for resisting arrest because Officer Sollars and others knew she did not resist arrest but that her reaction was involuntary due to her PTSD.

To the extent Plaintiff brings a claim for wrongful arrest, the Court finds the City is entitled to summary judgment. First, it is undisputed that Plaintiff was arrested on a valid warrant for her arrest. In the context of a claim of unlawful arrest, a constitutional violation occurs when an individual is arrested without probable cause. *See Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) ("If defendants in fact had probable cause to arrest Arnott, then Arnott's claim for false arrest [under § 1983] is barred." Citations omitted.). "It is firmly established that an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 4 U.S.C. § 1983 against the arresting officer." *Wood v. Wooten*, No. 1:18 CV 133 ACL, 2019 WL 5394506, at *4 (E.D. Mo. Oct. 22, 2019) (citation and quotation marks omitted). Because the officers had probable cause to arrest Plaintiff based on the warrant, she cannot, as a matter of law, maintain an unlawful arrest claim under § 1983. *See Cox v. N. Towne Mall*, No. 95 C 50283, 1997 WL 760505, at *6 (N.D. Ill. Dec. 8, 1997).

Plaintiff also claims her constitutional rights were violated when she was detained and charged with resisting arrest. It is undisputed that Plaintiff was detained for resisting arrest beyond

14

the arrest warrant under the Municipal Hold for the resisting arrest charge and was separately charged with resisting arrest. The City argues it is entitled to summary judgment because the decision to charge Plaintiff with resisting arrest, was not a decision by a final policymaker. (Doc. 66 at 18.) The Court disagrees.

As the City acknowledges, "[a]though proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, an unconstitutional government policy can be inferred from a single decision" made by a final policymaker; that is, a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered." *Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010) (citation and quotation marks omitted). In *Copeland*, the Eighth Circuit held the City of Bella Villa could not be held liable under *Monell* because the chief of police (whom the plaintiff alleged used excessive force to effectuate an unlawful arrest) was not the final policymaker under state law. Specifically, the Court of Appeals reasoned that under Missouri state law, as a fourth-class city, "the mayor and the board of aldermen . . . are the final policy makers for the 'good of the government of the city [and] the preservation of peace and good order.'" *Id.* (quoting Mo. Rev. Stat. § 79.110) (alteration in original).

Like the City of Bella Villa, it is undisputed that the City of Parkville is a fourth-class city under state law. As a fourth-class city, Missouri law provides "[t]he mayor and board of aldermen . . . shall have power to enact and ordain any and all ordinances . . . such as they shall deem expedient for the good government of the city, [and] the preservation of peace and good order." § 79.110. State law also provides that the mayor of a fourth-class city (with consent of the majority of the board of aldermen) "shall have power to appoint a . . . city attorney . . . and such other officers as he may be authorized by ordinance to appoint." Mo. Rev. Stat. § 79.230. The Parkville City Ordinances contemplate the appointment of "a City Attorney and City Prosecutor," with the latter designated by ordinance to "prosecute cases before the Municipal Court and any appeals therefrom." Parkville Ords., §§ 125.010, 125.020. Moreover, state law provides: "It shall be the duty of an attorney designated by the municipality to prosecute the violations of the municipality's ordinances before the municipal judges or before the associate circuit judges hearing the violations of that municipality's ordinances." Mo. Rev. Stat. § 479.120.

The Court agrees with the City to the extent Plaintiff argues Officer Sollars (or a sergeant with whom Officer Sollars spoke after placing Plaintiff in his patrol car) are final policymakers as to the resisting arrest charge and detention to support *Monell* liability under § 1983. *See also*

15

*Copeland*, 613 F.3d at 882. On the other hand, to the extent Plaintiff's claim relies on the decision by the city prosecutor to charge and/or prosecute her for resisting arrest, *Copeland* does not aid the City. Although no Missouri cases appear on point[5] the Court finds the City is not entitled to judgment as a matter of law on this argument. While the Mayor and Board of Aldermen of Parkville hold the power to appoint a city prosecutor (as provided under the city's ordinances), state law provides that such appointed attorney has the "duty . . . to prosecute the violations of the municipality's ordinances." "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Davis v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Under Missouri law, a city prosecutor is the final decisionmaker regarding prosecutorial decisions.[6] Moreover, the Mayor and City Counsel, by city ordinance, delegated to the city prosecutor authority to "prosecute cases before the Municipal Court and any appeals therefrom." The City's argument that the city prosecutor is not the final policymaker regarding Plaintiff's claim for *Monell* liability concerning her prosecution for resisting arrest is without merit. Because this is the only argument the City sets forth in its motion for summary judgment regarding this claim, the City's motion for summary judgment as to Count IV is **DENIED** as to Plaintiff's assertion of *Monell* liability for wrongful prosecution by the city prosecutor and is **GRANTED** in all other respects.

### III. Count V – Substantive Due Process

In Count V of her petition, Plaintiff asserts a § 1983 claim based on the violation of her substantive due process rights under the Fourteenth Amendment. Plaintiff acknowledges in her summary judgment response, however, that she pled Count V as an alternative to her Fourth Amendment excessive force and wrongful arrest/prosecution claims.

---

[5] Determining who is a final policymaker is a matter of state law. *See Copeland*, 613 F.3d at 882. "When there is no state supreme court case directly on point, [the Court's] role is to predict how the state supreme court would rule if faced with the same issue before [the Court]." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (citation and quotation marks omitted).

[6] While there appears to be no caselaw that considers §§ 79.110, 79.230, and 479.120, and very limited caselaw construing each statute on its own, it appears the Missouri Supreme Court, were it faced with this question, would rely on "the doctrine of *in pari materia* . . . [wherein] statutes relating to the same subject matter should be read together, but where one statute deals with the subject in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute." *State ex rel. Taylor v. Russell*, 449 S.W.3d 380, 382 (Mo. banc 2014) (citation and quotation marks omitted). Here, § 479.120 is the specific statute and §§ 79.110 and 79.230 are, if there is any conflict at all, the general statutes.

As the United States Supreme Court has explained, "'if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Plainly, "where Plaintiff's allegations can be addressed under the Fourth Amendment, those claims are not also cognizable as violations of substantive due process." *Riley v. Hessenflow*, No. 11-04253-CV-C-NKL, 2013 WL 139650, at *3 (W.D. Mo. 2013). Plaintiff acknowledges, and the Court agrees, that Plaintiff's claim of excessive force in Count III is governed by the Fourth Amendment. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that "excessive force claim[s] aris[ing] in the context of an arrest or an investigatory stop of a free citizen . . . [are] most properly characterized as . . . invoking the protections of the Fourth Amendment"); *Kasiah v. Crowd Sys., Inc.*, 915 F.3d 1179, 1183 (8th Cir. 2019) (applying the Fourth Amendment reasonableness standard to a claim of excessive force in arresting defendant).

The same is true for Count IV's claim for unlawful arrest/prosecution. *Johnson v. McCarver*, 942 F.3d 405, 410-11 (8th Cir. 2019) (claim of arrest without probable cause is governed by the Fourth Amendment); *Hoffert v. Westendorf*, 854 F. App'x 93, 96 (8th Cir. 2021) (claim of "right to be free from prosecution absent probable cause" is "only cognizable under the Fourth Amendment"); *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016) (recognizing that a § 1983 claim for "arrest[] or prosecut[ion] without probable cause . . . 'must be judged' under the Fourth Amendment, not substantive due process"; quoting *Albright v. Oliver*, 510 U.S. 266, 270-71 & n.4 (1994) (plurality op. joined by seven Justices on this issue)); *Johnson v City of Minneapolis*, 901 F.3d 963, 967 (8th Cir. 2018) (analyzing § 1983 wrongful arrest claim under the Fourth Amendment).

Plaintiff concedes Counts III and IV are governed by the Fourth Amendment. Therefore, the City is entitled to judgment as a matter of law on Count V, and the City's motion for summary judgment as to Count V is **GRANTED**.

## Conclusion

After careful consideration and for the reasons stated above, Defendants' motion for summary judgment (Doc. 65) is **GRANTED in part and DENIED in part.** The motion is denied as to Count IV, Plaintiff's claim of wrongful prosecution for resisting arrest to the extent *Monell* liability rests on a decision by the city prosecutor to charge (and detain) her with resisting arrest.

The motion for summary judgment is granted in all other respects and Plaintiff's claims against the Parkville Police Department are **DISMISSED**.

    **IT IS SO ORDERED**.

                                              s/ Roseann A. Ketchmark
                                              ROSEANN A. KETCHMARK, JUDGE
                                              UNITED STATES DISTRICT COURT

DATED: December 1, 2021